UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

LEROY PEOPLES,

                                        Plaintiff,

        v.                                                          9:18-CV-1349
                                                                    (LEK/ML)

GINA R. LEON, ELLEN E. ALEXANDER, JANE
DOE, JOHN DOE, and TINA M. STANFORD,

                                        Defendants.

_____

APPEARANCES:

LEROY PEOPLES
Plaintiff, *pro se*
05-A-2620
Great Meadow Correctional Facility
Box 51
Comstock, NY 12821

HON. LETITIA JAMES                        KEITH J. STARLIN, ESQ.
Attorney General for the                  Assistant Attorney General
State of New York
Attorney for Defendants
Gina R. Leon, Ellen E. Alexander and
Tina M. Stanford
The Capitol
Albany, New York 12224-0341

**MIROSLAV LOVRIC**
**United States Magistrate Judge**

## REPORT-RECOMMENDATION AND ORDER[1]

        Plaintiff *pro se* Leroy Peoples ("Peoples" or "Plaintiff"), an inmate in the custody of the

_____

        [1]        This matter was referred to the undersigned for report and recommendation pursuant to 28
U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

New York State Department of Corrections and Community Supervision ("DOCCS") at Great Meadow Correctional Facility ("Great Meadow C.F."), brings this action pursuant to 42 U.S.C. § 1983 against Defendants, in their official capacity, for violations of his First and Fourteenth Amendment rights.  Dkt. No. 1 ("Compl.").  Presently before the Court is Defendants' motion for summary judgment and dismissal of Peoples' Complaint pursuant to Rule 56(b) of the Federal Rules of Civil Procedure.  Dkt. No. 71.  For the following reasons, it is recommended that Defendants' motion for summary judgment be granted in part and denied in part.

## I. BACKGROUND[2]

### A. Facts[3]

---

[2]     Local Rule 7.1(a)(3) states:

Summary Judgment Motions

Any motion for summary judgment shall contain a Statement of Material Facts.  The Statement of Material Facts shall set forth, in numbered paragraphs, each material fact about which the moving party contends there exists no genuine issue. Each fact listed shall set forth a specific citation to the record where the fact is established. The record for purposes of the Statement of Material Facts includes the pleadings, depositions, answers to interrogatories, admissions and affidavits. It does not, however, include attorneys' affidavits.

The opposing party shall file a response to the Statement of Material Facts. The non-movant's response shall mirror the movant's Statement of Material Facts by admitting and/or denying each of the movant's assertions in matching numbered paragraphs. Each denial shall set forth a specific citation to the record where the factual issue arises.  The Court shall deem admitted any properly supported facts set forth in the Statement of Material Facts that the opposing party does not specifically controvert. The non-movant's response may also set forth any additional material facts that the non-movant contends are in dispute. Any facts set forth in the Statement of Material Facts shall be deemed admitted unless specifically controverted by the opposing party.

Local Rule 7.1(a)(3).

Defendants filed a Statement of Material Facts.  Dkt. No. 71-1.  Plaintiff responded and admits the facts contained in certain paragraphs of Defendants' Statement of Material Facts.  Dkt. No. 82.

[3]     The parties annexed exhibits to their submissions. without objection or challenge to the authenticity of the documents.  Dkt. Nos. 71-3 through 71-22; 71-26 through 71-28; 82-2 and 82-3.  Therefore, the Court will consider the exhibits in the context of the within motion.  *See U.S. v. Painting known as Hannibal*,

### 1.  Plaintiff's Criminal History

On May 22, 2000, Peoples was convicted of attempted Criminal Possession of a

Controlled Substance in the 3rd Degree with Intent to Sell.  Dkt. No. 71-6 at 6-7.  When

Peoples failed to return to court for his sentencing, a warrant was issued.  Dkt. No. 71-4 at 3.

On September 17, 2001, Peoples was sentenced to a prison term of eighteen to fifty-four

months.  *Id*.; Dkt. No. 71-6 at 7.

On July 1, 2002, Peoples was released on parole.  Dkt. No. 71-4 at 3; Dkt. No. 71-6 at 3,

7.  Peoples returned to prison in January 2003, after violating his conditions of parole.  *Id.*

On March 19, 2003, Peoples was re-released on parole.  *Id*.

In June 2003, Peoples was arrested for two gunpoint abductions, rapes, and robberies.

Dkt. No. 71-1 at ¶35; Dkt. No. 82 at p. 2, ¶14.  Pursuant to Indictment No. 2103/03, Peoples

was charged with two counts of rape, sodomy, kidnapping, robbery, and sexual abuse

stemming from two different incidents on March 7, 1998 and April 7, 2003.  Dkt. No. 71-4;

Dkt. No. 82-2 at 11-18.  The second incident occurred nineteen days after Peoples was

released on parole.  Dkt. Nos. 71-3, 71-4, 71-5, 71-26 at 40.  In January 2005, Peoples pled

guilty to two counts of rape in the first degree.  *Id*.  Peoples' guilty plea was precipitated by

DNA evidence obtained by authorities.  Dkt. No. 71-1 at ¶38; Dkt. No. 82-1 at ¶17.  Peoples'

conviction has not been overturned.  Dkt. No. 71-26 at 47.

At the sentencing hearing, the victim of the March 1998 rape provided a statement to the

_____

No. 07-CV-1511, 2010 WL 2102484, at *1, n.2 (S.D.N.Y.  May 18, 2010) (citing *Daniel v. Unum Provident
Corp.*, 261 F. App'x 316, 319 (2d Cir.  2008) ("[A] party is not required to authenticate documents on a
summary judgment motion where, as here, authenticity is not challenged by the other party)).  In light of the
procedural posture of the case, the following recitation is derived from the record now before the Court, with all
inferences drawn and ambiguities resolved in non-moving party's favor.  *Terry v. Ashcroft*, 336 F.3d 128, 137
(2d Cir. 2003).

court.  Dkt. No. 71-5 at 3-6.  In her statement, the woman described being attacked from behind by Peoples, who was masked and armed with a gun, while she was walking to a laundromat.  *Id.* at 3-5.  The woman claimed that Peoples put his gun to her head and walked her back to her home at gunpoint.  *Id.*  The woman stated that Peoples forced her into a stairway, pulled a hat over her face, told her to pull down her pants and "raped [her] from the back" while he held the gun to her head.  *Id.*  The woman told the court that Peoples told her to turn around and face him, stole her wallet, and fled.  Dkt. No. 71-5 at 3-6.

On January 27, 2005, Peoples was sentenced to a term of 3 1/3 to 10 years for the first rape and to 16 years for the second rape, to run concurrently, and a five year period of post-release supervision ("PRS").  Dkt. No. 71-3.  Because Peoples was fifteen at the time he committed the first rape, he was sentenced as a juvenile.  Dkt. No. 71-1 at ¶41; Dkt. No. 82 at p. 2, ¶20, p. 6, ¶13.  The sentencing court certified Peoples as a "Sex Offender" pursuant to New York Correction Law § 168-d.  Dkt. No. 71-3.  The court advised Peoples that he would be obligated to register as a sex offender in New York.  Dkt. No. 71-5 at 9.

## 2.  Parole Proceedings

In August 2018, defendant Offender Rehabilitation Counselor ("ORC") Gina R. Leon ("Leon") interviewed Peoples in preparation for an October 2018 hearing before the New York State Board of Parole (the "Board").  Compl. at 2; Dkt. No. 71-6 at 1.  Peoples did not submit a parole packet for his October 2018 interview and asked Leon to forward his 2016 packet to the Board for consideration.  Dkt. No. 71-2 at ¶ 15.  Following the interview, Leon prepared a Parole Board Report and Confidential Report with thirty-six recommended special conditions of release, the Offender Case Plan, and assisted in the preparation of the

4

COMPAS instrument[4].  Dkt. No. 71-6; Dkt. No. 71-10; Dkt. No. 71-23 at ¶ 5; Dkt. No. 71-11.

On October 16, 2018, defendants Board of Parole Commissioner Ellen Alexander ("Alexander"), John Doe, and Jane Doe conducted a parole release interview with Peoples to determine if he would be granted discretionary early release to parole or held until his maximum expiration ("ME") date and released to PRS.  Dkt. No. 71-2 at ¶¶ 12, 18.  During the hearing, Peoples "accepted responsibility" for the "gunpoint rapes" and admitted to selling and possessing crack and/or cocaine.  Dkt. No. 71-16 at 4, 5.  Peoples stated that he was "unable to complete" the recommended Sex Offender Counseling and Treatment Program ("SOCTP") while in DOCCS' custody.  *Id.* at 6.

On October 17, 2018, the Board denied Peoples discretionary release to parole, concluding that he should be held until June 7, 2019, his maximum expiration date.  Dkt. No. 71-16 at 13.  The Board explained:

> Based on your interview and overall record, after weighing the statutory factors, discretionary release is denied.  Your instant offense involved your actions committing two gunpoint rape related offenses. This is a continuation of your criminal history and record on community supervision, which includes a previous prison term for a drug related offense.
>
> The panel notes your rehabilitation efforts, including your achievement of your G.E.D., the tailor shop and completion of ART and ASAT.  You have not been able to complete the sex offender program.  Your disciplinary record includes multiple disciplinary offenses, including infractions since your last interview.  Also considered were your 2016 parole packet, a letter from the Appellate Advocates as well as official letters of opposition and support and your sentencing minutes.

---

[4]    COMPAS is a risk-assessment instrument used to "inform decision-making throughout the various phases of incarceration and community supervision."  *See* www.doccs.ny.gov (last visited Nov. 13, 2020).

> We have reviewed your case plan, your release plans and your
> risk and needs assessment which indicates your elevated risk
> of felony violence and need for reentry substance abuse
> services and treatment.

Dkt. No. 71-16 at 13.

The Board issued a Form 9026 Parol Board Decision Notice with thirty-six special

conditions ("Special Conditions") of release.[5]  Dkt. No. 1-2 at 3-11; Dkt. No. 71-2 at ¶ 19.  Of

these thirty-six conditions, Peoples objects to the following:

> 3.     I will participate in a substance abuse treatment program
>        as directed by the P.O.
>
> 4.     I will participate in an alcohol abuse treatment program
>        as directed by the P.O.
>
> 8.     I   will   participate in anti-aggression/anti-violence
>        counseling as directed by the P.O.
>
> 10.    I will have no contact with any person under the age of
>        eighteen without written permission of the P.O.
>
> 11.    I will comply with all case specific sex offender
>        conditions to be imposed by the P.O.
>
> 14.    I will comply with geographical restrictions as directed by
>        P.O.
>
> 15.    I will abide by the mandatory condition imposed by the
>        Sexual Assault Reform Act ("SARA").
>
> 16.    I will not use or possess any medications or supplements
>        designed or intended for the purpose of enhancing
>        sexual performance or treating erectile dysfunction
>        without the written permission of my parole officer and
>        the approval of his or her area supervisor.

---

[5]     The conditions imposed by the Board are the same conditions previously recommended by
Leon.  *Compare* Dkt. No 71-6 at 26-28 *with* Dkt. No. 1-2 at 5-10.

18.    I will not use the internet to access pornographic material, access a commercial social networking website, communicate with other individuals or groups for the purpose of promoting sexual relations with persons under eighteen, and communicate with a person under the age of eighteen unless I receive written permission from the Board of Parole to use the internet to communicate with a minor child under eighteen years of age who I am the parent of and who I am not otherwise prohibited from communicating with.

20.    I will not own, use, possess, purchase or have control of any computer, computer related material, electronic storage devices, communication devices and/or the internet unless I obtain prior written permission from my parole officer.

21.    If I am permitted by my parole officer to possess a computer at my residence, permission will be granted for only one computer.

22.    I will provide all personal, business, phone, internet service provider, and/or cable records to my parole officer upon request.

23.    I will provide copies of financial documents to my parole officer upon request.  These documents may include, but are not limited to, all credit card bills, bank statements, and income tax returns.

24.    I will provide all user IDs and passwords required to access the computer, my C.M.O.S., and Bios, internet service provider, and/all email accounts, instant messaging accounts, any removable electronic media, including but not limited to media such as smart cards, cell phones, thumb drives and web virtual storage.

25.    I will provide my parole officer with my password and user ID for any approved device.

26.    I acknowledge that individuals who have access to my computer system and/or other communication or

7

electronic storage devices will also be subject to monitoring and/or search and seizure. I agree to be fully responsible for all material, data, images and information found on my computer and/or other communication or electronic storage devices at all times.

27.    I will not create or assist directly or indirectly in the creation of any electronic bulletin board system, services that provide access to the internet, or any public or private computer network without prior written approval from my parole officer.

28.    I will not use any form of encryption, cryptography, steganography, compression and/or other method that might limit access to, or change the appearance of, data and/or images without prior written approval from my parole officer.

29.    I will not attempt to circumvent, alter, inhibit, or prevent the functioning of any monitoring or limiting equipment, device or software that has been installed by or at the behest of, or is being utilized by, the Department of Corrections and Community Supervision for the purposes of recording, monitoring or limiting my computer or internet use and access, nor will I tamper with such equipment, device or software in any way.

30.    I will cooperate with unannounced examinations directed by my parole officer of any and all computer(s) and/or other electronic device(s) to which I have access. This includes access to all data and/or images stored on hard disk drives, floppy diskettes, CD roms, optical disks, magnetic tape, cell phones, and/or any other storage media whether installed within a device or removable.

31.    I will install or allow to be installed, at my own expense, equipment and/or software to monitor or limit computer use.

32.    I will submit to photo imaging every 90 days, or whenever directed by my parole officer or other representative of the N.Y.S. Department of Corrections and Community Supervision.

33.    I understand that I shall not download, access, or otherwise engage in any internet enabled gaming activities to include Pokemon Go, I further understand that I shall not be in the company of any person who is engaged in any internet enabled gaming activities nor will I have any gaming software on any internet enabled device that I am permitted to access or otherwise possess.

34.    I will propose a residence to be investigated by the Department of Corrections and Community Supervision and will assist the Department in any efforts it may make on my behalf to develop a residence.

35.    If I am deemed a Level 3 risk pursuant to Article 6-c of the Correction Law - or - I am serving one or more sentences for committing or attempting to commit one or more offense(s) under Articles 130, 135 or 263 of the Penal Law or Sections 255.25, 255.26 or 255.27 of the Penal Law and the victim of such offense(s) was under 18 years of age at the time of the offense(s), and as such I must comply with section 259-c(14) of the Executive Law, I will not be released until a residence is developed and it is verified that such address is located outside the Penal Law definition of school grounds and is approved by the Department.

36.    In pertinent part, Executive Law 259-c(14) provides: "The Board shall require, as a mandatory condition of such release, that such sentenced offender shall refrain from knowingly entering into or upon any school grounds, as that term is defined in subdivision fourteen of section 220.00 of the Penal Law, or any other facility or institution primarily used for the care or treatment of persons under the age of eighteen while one or more of such persons under the age of eighteen are present, . . . "  Penal Law 220.00(14)

"School grounds" means (A) in or within any building, structure, athletic playing field, playground or land contained within the real property boundary line of a public or private elementary, parochial, intermediate, junior high, vocational, or high school, or (B) any area

9

accessible to the public located within one thousand feet of the real property boundary line comprising any such school or any parked automobile or other parked vehicles located within one thousand feet of the real property boundary line comprising any such school. For the purposes of this section an "area accessible to the public" shall mean sidewalks, streets, parking lots, parks, playgrounds, stores and restaurants.

Dkt. No. 1-2 at 5-11; Dkt. No. 71-1 at ¶ 20.

In March 2019, pursuant to the Sex Offender Registration Act ("SORA") (Correction Law § 168), the Board of Examiners of Sex Offenders made a risk level and designation recommendation to Queens County Supreme Court, the sentencing court. Dkt. No. 82-3 at 7. In May 2019, the Honorable Ira H. Margulis determined that Peoples' risk level was 3 and designated him a "sexually violent offender" pursuant to Correction Law § 168-d.[6] *Id.*

On June 5, 2019, Peoples was released from DOCCS' custody and began serving his term of PRS subject to the Special Conditions. Dkt. No. 22; Dkt. No. 71-26 at 11. In August 2019, Plaintiff was arrested for violating the conditions of his parole and held at Broome County Jail ("Broome C.J."). Dkt. No 71-26 at 61. On May 20, 2020, a final revocation hearing was conducted. Dkt. No. 82-3 at 8-17. Peoples plead guilty to tampering with his GPS monitoring device and removing it from this ankle. Dkt. No. 82-3 at 16; Dkt. No. 71-26 at 65-66. The Administrative Law Judge ordered Peoples held for eighteen months, which began to run on August 6, 2019. *Id.* Peoples was transferred from Broome C.J. to Elmira Correctional Facility ("Elmira C.F."). Dkt. No. 74.

---

[6]    On May 24, 2019, Peoples filed a Notice of Appeal of the order adjudicating him a Level 3 risk of re-offense and designating him a sexually violent offender. Dkt. No. 82-3 at 6. The record does not contain any evidence related to the outcome of the appeal.

In August 2020, Peoples was transferred from Elmira C.F. to Attica Correctional Facility ("Attica C.F.") and placed in protective custody due to his prior affiliation with the "Bloods-GKB" gang.  Dkt. No. 76; Dkt. No. 71-4 at 3; Dkt. No. 82-2 at 40-42.  Peoples is currently in DOCCS' custody.  Dkt. No. 79.

### B.  Procedural History

On November 16, 2018, the Court received the Complaint in the within action.  Dkt. No. 1.  Upon review of the Complaint, the Court directed defendants Leon, Alexander, Jane Doe, John Doe, and the Chairwoman of the New York State Board of Parole Tina Stanford ("Stanford") to respond to the § 1983 claims challenging the impositions of certain Special Conditions.  *See generally,* Dkt. No. 8.

On May 3, 2019, Leon, Alexander, and Stanford filed an Answer to the Complaint.  Dkt. No. 19.  On February 27, 2020, Peoples was deposed.  Dkt. No. 71-26.  On July 17, 2020, Defendants filed the within motion pursuant to Fed. R. Civ. P. 56 seeking judgment as a matter of law with respect to Peoples' claims.  Dkt. No. 71.

### II.  LEGAL STANDARD

A motion for summary judgment may be granted if there is no genuine issue as to any material fact, it was supported by affidavits or other suitable evidence, and the moving party is entitled to judgment as a matter of law.  The moving party bears the burden of demonstrating the absence of disputed material facts by providing the court with portions of pleadings, depositions, and affidavits which support the motion.  Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Facts are material if they may affect the outcome of the case as determined by substantive law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

317, 248 (1986).

To defeat a motion for summary judgment, the non-movant must set out specific facts showing that there is a genuine issue for trial, and cannot rest merely on allegations or denials of the facts submitted by the movant.  Fed. R. Civ. P. 56; *see also Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set out a documentary case."); *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525-26 (2d Cir. 1994). To that end, sworn statements are "more than mere conclusory allegations subject to disregard . . . they are specific and detailed allegations of fact, made under penalty of perjury, and should be treated as evidence in deciding a summary judgment motion" and the credibility of such statements is better left to a trier of fact.  *Scott*, 344 F.3d at 289 (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983) and *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995)).

Peoples asks the Court to consider his Complaint as an affidavit in opposition to the motion for summary judgment.  Dkt. No. 82-1 at 13.  "Although 'a plaintiff's pro se status does not allow him to rely on conclusory allegations or unsubstantiated speculation to overcome a motion for summary judgment,' *Almonte v. Florio*, 02-CV-6722, 2004 WL 60306, at *3 n.10 (S.D.N.Y. Jan. 13, 2004) (citation and italics omitted), where a plaintiff 'verifie[s] his complaint by attesting under penalty of perjury that the statements in the complaint [are] true and to the best of his knowledge,' the 'verified complaint is to be treated as an affidavit for summary judgment purposes,' *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995)." *King v. Puershner*, 17-CV-1373, 2019 WL 4519692, at *1 n.1 (S.D.N.Y. Sept. 19, 2019).  Here,

Plaintiff's complaint states, "I declare under penalty of perjury that the foregoing is true and correct." Compl. at 7. Therefore, the undersigned will accept Plaintiff's Complaint as an affidavit to the extent that the statements contained therein are based on Plaintiff's personal knowledge or are supported by the record. *See Berry v. Marchinkowski,* 137 F.Supp.3d 495, 530 (S.D.N.Y. 2005).

All ambiguities are resolved and all reasonable inferences are drawn in favor of the non-moving party. *Skubel v. Fuoroli*, 113 F.3d 330, 334 (2d Cir. 1997). Furthermore, where, as here, a party seeks judgment against a *pro se* litigant, a court must afford the non-movant special solicitude. *See Triestman v. Federal Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006). As the Second Circuit has stated,

> [t]here are many cases in which we have said that a pro se litigant is entitled to "special solicitude," . . . that a pro se litigant's submissions must be construed "liberally,". . . and that such submissions must be read to raise the strongest arguments that they "suggest," . . . . At the same time, our cases have also indicated that we cannot read into pro se submissions claims that are not "consistent" with the pro se litigant's allegations, . . . or arguments that the submissions themselves do not "suggest," . . . that we should not "excuse frivolous or vexatious filings by pro se litigants," . . . and that pro se status "does not exempt a party from compliance with relevant rules of procedural and substantive law.

*Id.* (citations and footnote omitted); *see also Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191–92 (2d Cir. 2008). Nonetheless, summary judgment is appropriate "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986).

### III.  DISCUSSION[7]

Defendants move for summary judgment arguing that: (1) the claims for monetary damages are barred by the Eleventh Amendment; (2) the First and Fourteenth Amendment claims related to the Special Conditions must be dismissed because the conditions were reasonably related to Plaintiff's crimes and tailored to serve legitimate state interests; (3) judicial immunity bars Plaintiff's claims against Alexander; and (4) Stanford was not personally involved in the October 2018 determination.  Defendants also argue that they are entitled to qualified immunity on the First and Fourteenth Amendment claims.  Dkt. No. 71-29.

### A.  Eleventh Amendment

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S. Const. amend. XI.  Regardless of the nature of the relief sought, in the absence of the State's consent or waiver of immunity, a suit against the State or one of its agencies or departments is proscribed by the Eleventh Amendment.  *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984).  "New York State has not consented to suit in federal court."  *Abrahams v. Appellate Div. of Supreme Court*, 473 F. Supp. 2d 550, 556 (S.D.N.Y. 2007) (citing *Trotman v. Palisades Interstate Park Comm'n*, 557 F.2d 35, 38-40 (2d. Cir. 1977)).

---

[7]    All unpublished opinions cited in this Report-Recommendation and Order, unless otherwise noted, have been provided to Plaintiff.

Section 1983 claims do not abrogate the Eleventh Amendment immunity of the states. *See Quern v. Jordan*, 440 U.S. 332, 340-41 (1979). "[C]laims against a government employee in his official capacity are treated as a claim against the municipality," and, thus, cannot stand under the Eleventh Amendment. *Hines v. City of Albany*, 542 F. Supp. 2d 218, 227 (N.D.N.Y. 2008).

However, "[u]nder the doctrine in *Ex Parte Young*, 'a plaintiff may avoid the Eleventh Amendment bar to suit and proceed against individual state officers . . . in their official capacities, provided his complaint (a) alleges an ongoing violation of federal law and (b) seeks relief properly characterized as prospective.' " *Clark v. DiNapoli*, 510 Fed. App'x 49, 51 (2d Cir. 2013) (quoting *In re Deposit Ins. Agency*, 482 F.3d 612, 618 (2d Cir. 2007)). "A plaintiff may not use this doctrine to adjudicate the legality of past conduct," meaning there must be some "plausible threat of future violations." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 277-78 (1986)); *see W. Mohegan Tribe and Nation*, 395 F.3d at 21 (noting that, "in determining whether the *Ex Parte Young* doctrine applies to avoid an Eleventh Amendment bar to suit, 'a court need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective' "); *see also New York State Corr. Officers & Police Benev. Ass'n, Inc. v. New York*, 911 F. Supp. 2d 111, 129 (N.D.N.Y. 2012) (D'Agostino, J.) ("[D]eclaratory relief is not permitted under *Ex Parte Young*, when it would serve to declare only past actions in violation of federal law: retroactive declaratory relief cannot be properly characterized as prospective.").

Here, Plaintiff seeks both monetary and non-monetary relief. Dkt. No. 1-1 at 19-20.

15

Plaintiff's claims against Defendants in their official capacities for monetary damages are barred by the Eleventh Amendment. Accordingly, I recommend that Defendants' motion for summary judgment and dismissal of all claims for monetary damages against Defendants in their official capacities be granted.

## B. Constitutional Claims Related to Special Conditions

Defendants move for summary judgment and dismissal of the section 1983 claims challenging the Special Conditions arguing that the conditions are reasonably related to Peoples' criminal history, past conduct, tailored to deter recidivism, and serve legitimate state interests in protecting the public. *See* Dkt. No. 71-29 at 4-19. Peoples asserts both general and specific challenges to the imposition of twenty-six of the thirty-six Special Conditions.

"[U]nder New York law, the Board of Parole is entitled to impose conditions on the conditional release of an inmate." *Doe v. Simon*, 221 F.3d 137, 139 (2d Cir. 2000); N.Y. Exec. Law §§ 259-c, 259-g, 259-i(2); N.Y. Comp. Codes R. & Regs. tit. 9, § 8003.3 ("A special condition may be imposed upon a [parolee] either prior or subsequent to release . . . each special condition may be imposed by a member of the Board of Parole, an authorized representative of the division of parole, or a parole officer," memorialized by "a written copy of each special condition imposed.").

In its determinations, "the Parole Board may consider all of the circumstances surrounding the conviction - including conduct for which petitioner has not been convicted." *Robles v. Williams*, No. 02 CIV 6102, 2007 WL 2403154, at *4 (S.D.N.Y. Aug. 22, 2007) (internal quotation marks omitted). Further, it is not "arbitrary nor capricious" for the Board to

16

consider remorse when deciding whether to deny parole. *Matter of Simon v. Travis*, 95 N.Y.2d 470, 477 (2000); *see also M.G. v. Travis*, 236 A.D.2d 163, 169 (1997).

Parolees are entitled to some form of due process in the imposition of special conditions of parole. *Pollard v. U.S. Parole Comm'n*, No. 15-CV-9131, 2016 WL 3167229, at *4 (S.D.N.Y. June 6, 2016) (citing *U.S. v. Green*, 618 F.3d 120, 122 (2d Cir. 2010)). This "limited due process right" entitles a parolee to conditions of parole that are reasonably related to his prior conduct or to a legitimate government interest such as rehabilitation, the prevention of recidivism and future offenses, and protection of the public. *See Singleton v. Doe*, No. 14-CV-0303, 2014 WL 3110033 at *3 (E.D.N.Y. July 7, 2014); *U.S. v Myers*, 426 F.3d 117, 123-24 (2d Cir. 2005) (summary order); *Robinson v. Pagan*, No. 05-CV-1840, 2006 WL 3626930, at *6 (S.D.N.Y. Dec. 12, 2006) (citation omitted); *Yunus v. Robinson*, No. 17-CV-5839, 2019 WL 168544, at *20 (S.D.N.Y. Jan. 11, 2019) (internal citation omitted). "If a special condition implicates a fundamental liberty interest," the court "must carefully examine it to determine whether it is 'reasonably related' to the pertinent factors, and 'involves no greater deprivation of liberty than is reasonably necessary[.]' " *Myers*, 426 F.3d at 126. Courts "must use common sense to guide [their] interpretation of supervised release conditions." *U.S. v. Moritz*, 651 Fed. App'x 807, 810 (10th Cir. 2016) (citations omitted).

In support of the motion, Leon provided a Declaration and swears that she reviewed the following documents in deciding what special conditions to recommend: sentence and commitment orders; pre-sentence investigation reports; sentencing minutes; the parole board criminal history report; DOCCS program assignment history; disciplinary history; legal date computation; DOCCS' program refusal notification forms; letters from the District

17

Attorney's office, the criminal defense attorney, and various individuals; release planning records; and the parole packet from Peoples' prior hearing in 2016.  Dkt. No. 71-23 at ¶¶ 5, 7.  Leon avers that her recommendations were reasonably related to Peoples' criminal history, his past conduct, and tailored to prevent recidivism, protect the public, and promote Peoples' rehabilitation.  *Id*. at ¶ 9.

Alexander also provided a Declaration in support of the motion.  Dkt. No. 71-2. Alexander stated that the Board's decision was guided by the factors set forth in N.Y. Executive Law § 259-1(2)(c)(A).[8]  *Id*. at ¶ 13.  Alexander avers that the Board reviewed the following records/documentation, in connection with the decision whether to grant Peoples early release to parole: sentence and commitment orders; pre-sentence investigation report; sentencing minutes (including a victim statement); criminal history; DOCCS institutional

---

[8]     Discretionary release on parole shall not be granted merely as a reward for good conduct or efficient performance of duties while confined but after considering if there is a reasonable probability that, if such inmate is released, he will live and remain at liberty without violating the law, and that his release is not incompatible with the welfare of society and will not so deprecate the seriousness of his crime as to undermine respect for law. In making the parole release decision, the procedures adopted pursuant to subdivision four of section two hundred fifty-nine-c of this article shall require that the following be considered: (i) the institutional record including program goals and accomplishments, academic achievements, vocational education, training or work assignments, therapy and interactions with staff and inmates; (ii) performance, if any, as a participant in a temporary release program; (iii) release plans including community resources, employment, education and training and support services available to the inmate; (iv) any deportation order issued by the federal government against the inmate while in the custody of the department and any recommendation regarding deportation made by the commissioner of the department pursuant to section one hundred forty-seven of the correction law; (v) any current or prior statement made to the board by the crime victim or the victim's representative, where the crime victim is deceased or is mentally or physically incapacitated; (vi) the length of the determinate sentence to which the inmate would be subject had he or she received a sentence pursuant to section 70.70 or section 70.71 of the penal law for a felony defined in article two hundred twenty or article two hundred twenty-one of the penal law; (vii) the seriousness of the offense with due consideration to the type of sentence, length of sentence and recommendations of the sentencing court, the district attorney, the attorney for the inmate, the pre-sentence probation report as well as consideration of any mitigating and aggravating factors, and activities following arrest prior to confinement; and (viii) prior criminal record, including the nature and pattern of offenses, adjustment to any previous probation or parole supervision and institutional confinement.

N.Y. Exec. Law § 259-i(2)(c)(A).

records; letters from the District Attorney and defense counsel; the COMPAS instrument; the Offender Case Plan; release planning records; letters from various individuals/entities; and Peoples' parole packet from his October 2016 interview. *Id*. at ¶¶ 14, 15. After the October 2018 interview, Alexander and the other Board members determined that Peoples would not be granted discretionary release and that he would remain incarcerated until his maximum expiration date. Dkt. No. 71-2 at ¶ 19. The Board imposed thirty-six special conditions of parole, which Alexander asserts are reasonably related to Peoples' criminal history, his past conduct, tailored to prevent recidivism, protect the public, and prevent future offenses. *Id*. at ¶¶ 20, 48. Alexander also opined that Peoples attempted to make excuses for his crimes and did not express remorse for his victims. *Id.* at ¶ 46.

In the Parole Board Release Decision Notice, the Board explained that "[y]our instant offense involved your actions committing two gunpoint rape related offenses" was a reason for the decision to deny parole. Dkt. No. 1-2 at 4.

In opposition to the motion, Peoples presents three general challenges to the imposition of all twenty-six conditions.

### 1. General Objections

First, Peoples claims that the conditions were improperly imposed by the Board, rather than by the sentencing court. Dkt. No. 1-1 at 10; Dkt. No. 82-1 at 7. As discussed *supra*, the Board of Parole is charged with "the duty and discretion of setting conditions for an inmate on parole release." *Doe*, 221 F.3d at 139; *Robinson*, 2010 WL 11507493, at *3 (citing N.Y.C.R.R. §§ 8003.2 and 8003.3); N.Y. Penal Law § 70.40(1)(b). Accordingly, Peoples' objection, on this ground, lacks merit.

Peoples also challenges the special conditions claiming that Defendants improperly considered circumstances surrounding his convictions, including the use of a gun, and refused to consider certain "mitigating factors." Dkt. No. 82-1 at 3-6. In his opposition to the motion, Peoples presents those "mitigating factors", for the first time. To wit, Peoples asserts that he did not use a gun during the commission of the crimes and claims that an "inoperable b.b. gun was discovered in the second crime." Dkt. No. 82 at p.5-8, ¶¶ 2, 3, 7, 12, 14, 15. Additionally, Peoples claims that he knew one of the victims, that she was "not a stranger," and now contends that he did not "rob her, abduct her at gunpoint, or rape[] her by forcible compulsion[.]" Dkt. No. 82 at p. 6, ¶4; Dkt. No. 82-1 at 4-5. Peoples also insists that one of the assaults was a consensual sexual encounter in a pre-arranged meeting place as payment for drugs. *Id.* at p. 6, ¶¶ 4-6.

As discussed *supra*, "[t]he Board may consider all of the circumstances surrounding the conviction—including conduct for which petitioner has not been convicted—so long as some record evidence of such conduct exists in the record and it is not the sole basis for the Board's determination." *Williams v. Travis*, 783 N.Y.S.2d 413, 414 (2004). Here, the record contains extensive references to Peoples' use of a gun during the commission of the crimes and to the fact that the victims were strangers and that they were raped by forcible compulsion.

During the plea hearing, Peoples admitted to two counts of engaging in "sexual intercourse with a female to whom [he] [was] not married by means of forcible compulsion." Dkt. No. 82-2 at 28. Upon inquiry, Peoples admitted that the women were strangers and that he displayed "what appeared to be a handgun." *Id*. at 28-29. During the parole hearing,

Peoples was asked the following question and gave the following answer:

> Q.    Okay.  So are you accepting responsibility for these
>        gunpoint rapes?
>
> A.    I have, I am and this is part of my past that I cannot take
>        away.

Dkt. No. 71-16 at 4.

Peoples' new, self-serving statements, presented for the first time in his opposition to the motion for summary judgment, are unsupported by the record and do not create an issue of fact for a jury.  Indeed, no reasonable jury could find the assertions credible and conclude, based upon the statements, that the Board's decision to consider all aspects of the seriousness of Peoples' offense was arbitrary or capricious.  *See Stolow v. Greg Manning Auctions Inc.*, 80 Fed. App'x 722, 725 (2d Cir. 2003) (citing *Hayes v. New York City Dep't of Corr.*, 84 F.3d 614, 619 (2d Cir. 1996) ("[A] party may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that . . . contradicts the affiant's previous deposition testimony.")); *Fox v. Harris*, No. 6:15-CV-0616 (LEK/ATB), 2017 WL 1319835, at *2 (N.D.N.Y. Apr. 7, 2017) (holding that the plaintiff "cannot escape summary judgment via 'self-serving statements . . . made in his opposition that contradict his sworn deposition testimony.' ") (citation omitted).

Finally, Peoples contends that Defendants failed to consider his plea transcript.  Dkt. No. 82-1 at 3-6.  Leon and Alexander do not state whether they considered Peoples' plea transcript during their reviews.  However, as noted *supra*, the statements in the plea transcript do not offer any support for Peoples' objection.  As noted *supra*, Plaintiff admitted raping two strangers with "forcible compulsion" using "what appeared to be a handgun."  Dkt.

No. 82-2 at 28-29.

Having determined that Peoples' general objections to the imposition of the Special Conditions lack merit, the Court will address Peoples' specific challenges to the Special Conditions, in turn.[9]

### 2. Specific Objections

### a. Requirement to Participate in Programs

3.   I will participate in a substance abuse treatment program as directed by the P.O.

4.   I will participate in an alcohol abuse treatment program as directed by the P.O.

8.   I will participate in anti-aggression/anti-violence counseling as directed by the P.O.

Peoples objects to these conditions as arbitrary and capricious because he satisfactorily completed Aggression Replacement Training ("ART") and Alcohol and Substance Abuse Treatment ("ASAT") while in DOCCS' custody and claims that he has "been clean and sober for quite some time." Dkt. No. 1-1 at 10; Dkt. No. 71-16 at 10. Alexander avers that the conditions were imposed due to Peoples' "lengthy, significant history of alcohol and substance abuse and history of selling controlled substances" and history of violent behavior and disciplinary violations while in custody, that continued even after Peoples completed ART. Dkt. No. 71-2 at ¶¶ 49(A) and (B). Alexander also explains that the conditions are reasonable because, although Peoples participated in ASAT ten years ago, he has not lived

---

[9]     Plaintiff does not present any constitutional challenge to the following Special Conditions: 1, 2, 5, 6, 7, 9, 12, 13, 17, 19. Dkt. No. 1-1 at 10-14 and Dkt. No. 82-1.

outside of prison at all since that time. *Id.*

According to the record before the Court, Peoples began using and abusing alcohol and marijuana at ages eleven and twelve. Dkt. No. 71-1 at ¶¶ 59-60; Dkt. No. 82 at p. 2, ¶ 25. Plaintiff also has a history of crack/cocaine and Ecstasy use. *Id.* Peoples was arrested, as a juvenile, in 1996 and 1998 and convicted of criminal possession of a controlled substance with intent to sell. Dkt. No. 71-6 at 7-8. Peoples admitted that he was smoking marijuana when he was arrested in March 2000 for possession of crack/cocaine with the intent to sell and stated that he was "on drugs" at the time he committed one of the rapes. Dkt. No. 71-1 at ¶¶ 60-61; Dkt. No. 82 at p. 2, ¶ 25.

During the parole hearing, Peoples admitted to selling drugs and stated that his "actions came about because [he] was growing up in an environment where [he] resorted to drugs and anger to address all of [his] problems." Dkt. No. 71-16 at 4, 5, 9. Peoples told the Board that he would participate in substance abuse services if it was a condition of parole. *Id.* at 10. Although Peoples claims that he has "been clean and sober for quite some time," during his deposition, he testified to testing positive for marijuana on June 13, 2020. Dkt. No. 71-26 at 86-87. The COMPAS instrument indicates that Peoples has a history of substance abuse including committing offenses while high/drunk, prior drug charges/convictions, history of drug and alcohol problems, history of prior treatment, and history of failed drug tests. Dkt. No. 71-10 and 4, 10. As a result, Leon concluded that Peoples was at risk for substance abuse problems. *Id.* at 5, 10.

The record is also replete with evidence suggesting that anti-aggression programming is reasonably related to Peoples' history. Due to the nature of Plaintiff's conviction, the

sentencing court designated Peoples as a "sexually violent offender". Dkt. No. 82-3 at 7. During his pre-trial detainment and incarceration, Peoples incurred several disciplinary infractions and was found guilty of violating prison rules on twenty-three occasions and received violations for possessing unauthorized medications, smuggling, fighting, violent conduct, creating a disturbance, assaulting an inmate, harassment, and threats. Dkt. No. 71-1 at ¶¶ 69, 71; Dkt. No. 82 at p. 3, ¶30, at p. 8, ¶21. Peoples incurred thirty one months of recommended loss of good time as a result of disciplinary infractions. Dkt. No. 71-1 at ¶73; Dkt. No. 82 at p. 3, ¶30. Indeed, some of the infractions occurred after Peoples participated in ART. Dkt. No. 71-1 at ¶89; Dkt. No. 82 at p. 3, ¶41. Between his October 2016 parole interview and his October 2018 parole interview, Peoples was found guilty of three Tier II violations and two Tier III violations including one assault involving physical injuries to another inmate. Dkt. No. 71-1 at ¶73; Dkt. No. 82 at p. 3, ¶32. Peoples does not dispute his disciplinary history and admits that he refused to complete sex offender programming. Dkt. No. 71-1 at ¶¶68, 75-77; Dkt. No. 82 at p. 3 at ¶34, p. 8, ¶20; Dkt. No. 71-16 at 5, 9.

During the parole interview, when asked by Alexander, "what do you think about why you did [your crimes] and what impact you've had on your victims?" Dkt. No. 71-16 at 4. Peoples responded that he believed his "actions came about because I was growing up in an environment where I resorted to drugs and anger to address all of my problems." *Id.*

In light of Peoples' history of drug abuse, history of criminal conduct involving drugs, the forcible and violent circumstances surrounding his crimes, and disciplinary record in prison, the Special Conditions directing him to participate in alcohol, substance and anti-aggression programs are not arbitrary or capricious. *See Ahlers v. New York State Div. Of Parole*, 1

A.D.3d 849, 850 (2003).  Indeed, Peoples' recent placement in DOCCS protective custody, due to his gang affiliations, further supports the need for Peoples to participate in anti-aggression programming.  Dkt. No. 76.  The Court finds the conditions to be "reasonably related to legitimate penological objectives and rationally related to [plaintiff's] history and potential recidivism."

Accordingly, the Court recommends that Defendants' motion for summary judgment and dismissal of Plaintiff's constitutional challenge to these conditions be granted.

### b.  Minors

> 10.    I will have no contact with any person under the age of
>        eighteen without written permission of the P.O.

Peoples challenges this condition because his victims were not under eighteen.  Dkt. No. 1-1 at 11.  Peoples also claims that the condition precludes him from having contact with his younger brother and extended family members.  *Id.* at 10-11.

"[I]t is well established that a parent's interest in maintaining a relationship with his or her child is a fundamental liberty interest protected by substantive due process."  *Maldonado v. Mattingly*, No. 11-CV-1091, 2019 WL 5784940, at *10 (W.D.N.Y. Nov. 6, 2019) (citations omitted).  Courts however, have not extended the "same solicitude" to non-custodial parents who did not play an active role in a child's life, prior to incarceration.  *Yunus*, 2009 WL 168544, at *34 (citing *Meyers*, 426 F.3d at 128) (holding that the parolee must demonstrate some "commitment to the responsibilities of parenthood")).

Here, Peoples does not have any children and does not claim to have a custodial relationship with any member of his extended family or his younger brother.  Dkt. No. 71-1 at

¶81; Dkt. No. 82 at p. 3, ¶38.  Moreover, in 2001, Peoples' mother obtained an Order of

Protection against Peoples on her behalf and on behalf of Peoples' minor brother.  Dkt. No.

71-1 at ¶82; Dkt. No. 71-6 at 3-4[10].  Peoples testified that he has four nieces/nephews under

the age of eighteen, however, the record lacks facts establishing that Peoples had a close

relationship with any of them.  Dkt. No. 71-26 at 107.  The condition does not act as a total

bar preventing Peoples from maintaining familial relationships with his nieces and nephews

or ban him from all contact with any person under 18 years of age.  Rather, Peoples is

required to seek permission from his parole officer.  To this end, Peoples testified that when

he was on parole from June 2019 until August 2019, he never requested, or was denied,

permission to have contact with anyone under the age of eighteen.  Dkt. No. 71-26 at 82.

Pursuant to the record before the Court, this condition is not arbitrary or capricious.  *See*

*Maldonado*, 2019 WL 5784940, at *3, 10 (finding same condition restricting contact with

minors to be reasonable); *see also Yunus*, 2009 WL 168544, at *34 (reasoning that there is

no authority for proposition that a parolee has a fundamental right to visit family members).

Accordingly, the Court finds that this condition does not violate Peoples' due process rights

and recommends that Defendants' motion for summary judgment and dismissal of Plaintiff's

constitutional challenge to this condition be granted.

### c.  Travel Restrictions

14.    I will comply with geographical restrictions as directed
by P.O.

---

[10]    Peoples does not dispute the truth of this assertion but objects to the fact because "defendants have not produced the actual Order of Protection[.]" Dkt. No. 82 at p. 9, ¶26.

Peoples contends that he should be permitted to travel within the state and argues that restricting his movement to his county of residence constitutes an "unconstitutional bill of attainder." Dkt. No. 1-1 at 11. Defendants argue that the condition is necessary as Peoples previously fled to Connecticut to avoid arrest. Dkt. No. 71-2 at ¶ 49(E).

Courts have held that limitations on the freedom of travel and association may be imposed without violating the parolee's constitutional rights. *See Bostic v. Jackson*, No. 9:04-CV-676 (NAM/GJD), 2008 WL 1882696, at \*2 (N.D.N.Y. Apr. 24, 2008); *Cusamano v. Alexander*, 691 F.Supp.2d 312 (N.D.N.Y. 2009) (finding no due process violation where the parolee's special conditions included travel limitations). Moreover, travel restrictions may assist parole officers in monitoring a parolee's activities and thus, serve a valid penological interest. *Trivsan v. Annucci*, No. 14-CV-6016, 2019 WL 2304647, at \*5 (E.D.N.Y. May 30, 2019).

Based upon the record and Peoples' prior conduct, the Court does not find the imposition of this condition to be arbitrary or capricious. In 2000, a warrant was issued when Peoples failed to return to court for sentencing on his drug conviction. Dkt. No. 71-4 at 3. During his deposition, Peoples testified that while he was on parole in 2003, one of the conditions was that he not leave the state without prior permission from his parole officer. Dkt. No. 71-26 at 43-43. Despite that condition, Peoples traveled from Queens to Connecticut without permission from his Parole Officer. *Id.* Additionally, at his parole revocation hearing, Peoples plead guilty to tampering with his GPS monitoring device and removing it from his ankle. Dkt. No. 82-3 at 16.

Accordingly, the Court recommends that Defendants' motion for summary judgment and

dismissal of Plaintiff's constitutional challenge to this condition be granted.

### d. Sexual Assault Reform Act ("SARA") Conditions

15.  I will abide by the mandatory condition imposed by the Sexual Assault Reform Act ("SARA").

34.  I will propose a residence to be investigated by the Department of Corrections and Community Supervision and will assist the Department in any efforts it may make on my behalf to develop a residence.

35.  If I am deemed a Level 3 risk pursuant to Article 6-c of the Correction Law - or - I am serving one or more sentences for committing or attempting to commit one or more offense(s) under Articles 130, 135 or 263 of the Penal Law or Sections 255.25, 255.26 or 255.27 of the Penal Law and the victim of such offense(s) was under 18 years of age at the time of the offense(s), and as such I must comply with section 259-c(14) of the Executive Law, I will not be released until a residence is developed and it is verified that such address is located outside the Penal Law definition of school grounds and is approved by the Department.

36.  In pertinent part, Executive Law 259-c(14) provides: "The Board shall require, as a mandatory condition of such release, that such sentenced offender shall refrain from knowingly entering into or upon any school grounds, as that term is defined in subdivision fourteen of section 220.00 of the Penal Law, or any other facility or institution primarily used for the care or treatment of persons under the age of eighteen while one or more of such persons under the age of eighteen are present, . . . " Penal Law 220.00(14)

"School grounds" means (A) in or within any building, structure, athletic playing field, playground or land contained within the real property boundary line of a public or private elementary, parochial, intermediate, junior high, vocational, or high school, or (B) any area accessible to the public located within one thousand feet of the real property boundary line comprising any such

> school or any parked automobile or other parked
> vehicles located within one thousand feet of the real
> property boundary line comprising any such school. For
> the purposes of this section an "area accessible to the
> public" shall mean sidewalks, streets, parking lots, parks,
> playgrounds, stores and restaurants.

Peoples does not dispute that he has been designated as a level three offender but objects to these conditions arguing his crimes did not involve minors, school grounds, or public parks. Dkt. No. 82-1 at 8; Dkt. No. 1-1 at 12.

In 2000, pursuant to SARA, the mandatory conditions set forth in N.Y. Executive Law § 259-c(14) applied only to sex offenders convicted of certain enumerated offenses and only if the victim had been under the age of eighteen. *Williams v. Dep't of Corr. & Cmty. Supervision*, 150, 24 N.Y.S.3d 18, 21 (2016). In 2005, SARA was amended to include level three sex offenders, regardless of the age of the victim. *Id.* Initially, courts in New York offered varying interpretations of the scope of the 2005 amendment. In November 2020, the New York Court of Appeals issued two decisions and addressed the scope of the 2005 amendments. *People ex rel. Negron v. Sup't Woodbourne Corr. Fac.*, 2020 WL 6828791, at *1 (N.Y. Nov. 23, 2020) and *People ex rel. Johnson v. Sup't Adirondack Corr. Fac.*, 2020 WL 6828834 (N.Y. Nov. 23, 2020). In both cases, the Court held that the 2005 amendments to SARA apply "to any defendant who is serving a sentence for various enumerated sex offenses, when the victim of the offense was under the age of 18 at the time of the offense or, [. . . ] the defendant has been designated a level three sex offender." *Id.* The Southern District similarly interpreted the 2005 amendments to SORA. *Yunus*, 2018 WL at 3455408, at *4. Peoples is a level three sex offender convicted of violating Penal Law § 130.35, one of

the enumerated offenses.  Dkt. No. 82-2 at 11.  Therefore, pursuant to the controlling

caselaw on this issue, Peoples is subject to the mandatory condition.

In a further attempt to invalidate the conditions, Peoples also argues that the 2005

amendments were enacted in August 2005 and September 2005, after his conviction and

sentencing, and therefore, enforcing the conditions against him violates the Ex Post Facto

Clause.  Dkt. No. 82-1 at 8.

"Ex post facto" is a term of art applicable only to "punishment" - legislative action that

retroactively "punishes as a crime an act previously committed, which was innocent when

done," "makes more burdensome the punishment for a crime, after its commission," or

"deprives one charged with crime of any defense available according to law at the time when

the act was committed."  *Beazell v. Ohio*, 269 U.S. 167, 169-70 (1925).  The Ex Post Facto

Clause prohibits laws which "retroactively alter the definition of crimes or increase the

punishment for criminal acts."  *Collins v. Youngblood*, 497 U.S. 37, 43 (1990).  Courts in New

York and in the Second Circuit have held that the 2005 SARA amendments are "non-

punitive", do not violate the Ex Post Facto Clause and were enacted to protect the

community, not punish offenders.  *Smith v. Flynn*, No. 16-CV-9242, 2018 WL 3946453, at *7

(S.D.N.Y. Aug. 16, 2018) (citing *Wallace v. New York*, 40 F.Supp.3d 278, 314 (E.D.N.Y.

2014) and *Williams v. Dep't of Corr. and Cmty. Supervision*, 24 N.Y.S.3d 18, 23 (1st Dep't

2016)); *Devine v. Annucci*, 56 N.Y.S.3d 149 (2017) (holding that the retroactive application of

SARA does not violate the Ex Post Facto Clause).  Consequently, the Court is not

persuaded by Peoples' arguments.

Accordingly, the Court does not find the imposition of these conditions to be arbitrary or

capricious and recommends that Defendants' motion for summary judgment and dismissal of

Plaintiff's constitutional challenge to these conditions be granted.

### e.  Medications

> 16.     I will not us or possess any medications or supplements
> designed or intended for the purpose of enhancing sexual
> performance or treating erectile dysfunction without the written
> permission of my parole officer and the approval of his or her
> area supervisor.

Peoples argues that this condition violates his right to privacy.  Dkt. No. 1-1 at 12.

Defendants have not responded to Peoples' arguments.

Based upon the facts surrounding Peoples' convictions, the condition does not involve a

greater deprivation of liberty than is necessary as the condition is not a complete ban on

taking medication for sexual enhancement.  Additionally, Peoples does not allege that,

during his time on parole, that he requested, and was unreasonably denied, permission to

possess any medications intended to enhance his sexual performance.  Accordingly,

because the evidence suggests that the condition is reasonably related to Peoples' criminal

history and to the goals of protecting the public, the Court recommends that Defendants'

motion for summary judgment and dismissal of Plaintiff's constitutional challenge to this

condition be granted.

### f.  Computer and Internet Restrictions

> 18.     I will not use the internet to access pornographic
> material, access a commercial social networking website,
> communicate with other individuals or groups for the
> purpose of promoting sexual relations with persons
> under eighteen, and communicate with a person under
> the age of eighteen unless I receive written permission
> from the Board of Parole to use the internet to

31

communicate with a minor child under eighteen years of age who I am the parent of and who I am not otherwise prohibited from communicating with.

20.    I will not own, use, possess, purchase or have control of any computer, computer related material, electronic storage devices, communication devices and/or the internet unless I obtain prior written permission from my parole officer.

21.    If I am permitted by my parole officer to possess a computer at my residence, permission will be granted for only one computer.

22.    I will provide all personal, business, phone, internet service provider, and/or cable records to my parole officer upon request.

24.    I will provide all user IDs and passwords required to access the computer, my C.M.O.S., and Bios, internet service provider, and/all email accounts, instant messaging accounts, any removable electronic media, including but not limited to media such as smart cards, cell phones, thumb drives and web virtual storage.

25.    I will provide my parole officer with my password and user ID for any approved device.

26.    I acknowledge that individuals who have access to my computer system and/or other communication or electronic storage devices will also be subject to monitoring and/or search and seizure. I agree to be fully responsible for all material, data, images and information found on my computer and/or other communication or electronic storage devices at all times.

27.    I will not create or assist directly or indirectly in the creation of any electronic bulletin board system, services that provide access to the internet, or any public or private computer network without prior written approval from my parole officer.

28.    I will not use any form of encryption, cryptography,

steganography, compression and/or other method that might limit access to, or change the appearance of, data and/or images without prior written approval from my parole officer.

29.    I will not attempt to circumvent, alter, inhibit, or prevent the functioning of any monitoring or limiting equipment, device or software that has been installed by or at the behest of, or is being utilized by, the Department of Corrections and Community Supervision for the purposes of recording, monitoring or limiting my computer or internet use and access, nor will I tamper with such equipment, device or software in any way.

30.    I will cooperate with unannounced examinations directed by my parole officer of any and all computer(s) and/or other electronic device(s) to which I have access.  This includes access to all data and/or images stored on hard disk drives, floppy diskettes, CD roms, optical disks, magnetic tape, cell phones, and/or any other storage media whether installed within a device or removable.

31.    I will install or allow to be installed, at my own expense, equipment and/or software to monitor or limit computer use.

33.    I understand that I shall not download, access, or otherwise engage in any internet enabled gaming activities to include Pokemon Go, I further understand that I shall not be in the company of any person who is engaged in any internet enabled gaming activities nor will I have any gaming software on any internet enabled device that I am permitted to access or otherwise possess.

Peoples' argument that these conditions were improperly imposed and unrelated to his criminal history because his crimes did not involve a minor or the internet, *see* Dkt. No. 82-1 at 8, lack merit.

Because Peoples is a level three sex offender, N.Y. Executive Law § 259-c(15) dictates

that he is:

> . . . prohibited from using the internet to access pornographic material, access a commercial social networking website, communicate with other individuals or groups for the purpose of promoting sexual relations with persons under the age of eighteen, and communicate with a person under the age of eighteen when such offender is over the age of eighteen, provided that the board may permit an offender to use the internet to communicate with a person under the age of eighteen when such offender is the parent of a minor child and is not otherwise prohibited from communicating with such child.[11]

N.Y. Exec. Law § 259-c(15) (the Electronic Security and Targeting of Online Predators Act ("e-STOP")); *M.F. v. New York Exec. Dep't Div. of Parole*, No. 08 CV 1504, 2010 WL 9461647, at *2 (S.D.N.Y. Mar. 24, 2010) (citing N.Y. Exec. § 259-c(15)).  The aforementioned condition applies regardless of whether the internet played any role in the sex offender's crimes.  *Yunus*, 2018 WL 3455408, at *4.

During Peoples' sentencing, he was "certified" as a sex offender and advised that he was obligated to register as a sex offender in New York.  Dkt. No. 71-3.  As a result of that

---

[11]    As used in this subdivision, a "commercial social networking website" shall mean any business, organization or other entity operating a website that permits persons under eighteen years of age to be registered users for the purpose of establishing personal relationships with other users, where such persons under eighteen years of age may: (i) create web pages or profiles that provide information about themselves where such web pages or profiles are available to the public or to other users; (ii) engage in direct or real time communication with other users, such as a chat room or instant messenger; and (iii) communicate with persons over eighteen years of age; provided, however, that, for purposes of this subdivision, a commercial social networking website shall not include a website that permits users to engage in such other activities as are not enumerated herein.

N.Y. Exec. Law § 259-c.

designation and pursuant to DOCCS Directives 8304(III)(A)[12] and 9202[13], Peoples is a

mandatory sex offender subject to conditions of release referred to as "GES SC 40 A-F".

Dkt. No. 71-22; Dkt. No. 71-2 at ¶ 49(J).  Conditions GES SC 40 A-F were recommended by

Leon and included in the Board's Decision and Notice as Special Conditions 20, 21, 22, 24,

25, 26, 27, 28, 29, 30, and 31.  Dkt. No. 1-1 at 7-9; Dkt. No. 71-6 at 27; Dkt. No. 71-2 at ¶¶

49(J), (L)-(N).

Peoples also contends that the aforementioned "sweeping" conditions are overly-broad,

prevent him from pursuing "entrepreneurial aspirations," and are not necessary or legitimate.

Dkt. No. 82-1 at 10-14.  Peoples seeks to invalidate these conditions relying upon the

Supreme Court decision in *Packingham v. North Carolina*, 137 S.Ct. 1730 (2017).  In

*Packingham*, the Court held that a broad North Carolina criminal statute barring registered

sex offenders from accessing commercial social networking websites was unconstitutional.

*Id.*

Defendants argue that *Packingham* does not apply because the restrictions at issue

---

[12]    DOCCS Directive 8304(III)(A) defines mandatory sex offenders as "[a]ll offenders subject to registration with the New York State Offender Registry."  Dkt. No. 71-21.

[13]    DOCCS Directive 9202, entitled Management of Sex Offender Use of Computer Related Materials and Electronic Devices, provides, in pertinent part:

> B.    Condition of Supervision: Condition(s) of release relating to use and access to computers, computer related material, electronic storage devices, communication devices, and the Internet on sex offenders will be imposed as follows:

> 1.    ORCs and SORCS are to identify mandatory sex offender cases on an ongoing basis and include the special condition (GES SC 40 A-F) on the Parole Board Report or other report prepared for the Parole Board.

Dkt. No. 71-22.

35

were imposed as parole conditions.  Dkt. No. 71-29 at 14-17.  Upon review of recent

caselaw, the Court does not agree with Defendants' restrictive interpretation of the holding in

*Packingham*.

In *Yunus v. Robinson*, the Southern District considered, and rejected, a similar

argument.  The court noted "[e]ven before *Packingham*, courts in this Circuit looked with

disfavor on broad cellphone, computer and internet restrictions for sex offenders on parole or

supervised release, generally requiring an individualized showing that a particular restriction

'relates to [the offender's] prior conduct.' " *Yunus,* 2018 WL 3455408, at *30 (citations

omitted).  The Court reasoned, "[t]here is no indication in *Packingham* that parolees are

exempted from the Court's decision [. . . ] "[i]n fact, the [Supreme] Court was clear that the

distinction between those who were presently under the supervision of the criminal justice

system and those who no longer were was not a basis for it's holding[.]" *Yunus,* 2019 WL

168544, at *16.

This district court and others have rejected similar arguments.  *See Lopez v. Stanford*,

No. 18-CV-3493, 2020 WL 6900909, at *8 (E.D.N.Y. Nov. 24, 2020) (rejecting the

defendants' argument that *Packingham* is inapplicable to parole conditions); *Hartwick v.

Annucci*, No. 5:20-CV-408 (DNH), 2020 WL 6781562, at *9 (N.D.N.Y. Nov. 18, 2020) (citing

to *Packingham* in context of the plaintiff's challenge to parole conditions); *Manning v.

Powers*, 281 F.Supp.3d 953, 961 (C.D. Cal. 2017) (holding that the plaintiff's challenge to a

social media parole condition "is controlled by the Supreme Court's recent decision in

*Packingham*").

In January 2019, the Second Circuit addressed a similar argument, in the context of a

condition of supervised release imposed at sentencing. In *U.S. v. Eaglin*, 913 F.3d 88 (2d Cir. 2019), the Second Circuit was presented with a constitutional challenge to a condition that barred the plaintiff from "accessing the Internet from any computer or Internet-capable device in any location unless authorized by the [c]ourt or as directed by the U.S. Probation Office upon approval of the [c]ourt." *Id*. at 94. The condition was defined as a broad ban on social networking sites. *Id*. at 96. The court acknowledged the differences between the facts at hand and *Packingham*. To wit, a criminal statute was not at issue and Eaglin's challenged condition of supervised release applied only to him and for a limited duration. Nevertheless, the Circuit concluded that *Packingham's* holding applied stating, "[i]n our view, *Packingham* [ ] establishes that, in modern society, citizens have a First Amendment right to access the internet" and "to access certain social networking websites[.]" *Eaglin,* 913 F.3d at 96-97. The court held that the ban was substantially unreasonable holding that, "[i]n light of our precedent, and as emphasized in *Packingham's* recognition of a First Amendment right to access certain social networking websites, the imposition of a total internet ban as a condition of supervised release inflicts a severe deprivation of liberty." *Id*. at *97. The Circuit further noted that Eaglin was not convicted of a crime involving the internet, that the ban would restrict his access to banking and employment, and that the condition was not necessary to protect the public. *Id*. at 97-98.

Defendants also argue that *Packingham* does not apply because Peoples may possess or purchase a computer, with permission from his parole officer. Dkt. No. 71-29 at 11-14. Once again, *Yunus v. Robinson* is instructive. In *Yunus*, the plaintiff, a parolee convicted of two counts of kidnapping, claimed that the following conditions violated his First Amendment

rights:

> No. 12:  Plaintiff cannot engage or participate in any online computer service that involves the exchange of electronic messages;
>
> No. 35:  Plaintiff may not "own or possess a beeper, scanner or cell phone without permission of his parole officer";
>
> No. 39:    Plaintiff may not possess a computer or computer-related materials without approval by his parole officer; and
>
> No. 48:  Plaintiff is prohibited from accessing a commercial social networking website.

*Yunus*, 2019 WL 168544, at *15.

The court rejected the defendants' argument that the conditions were "not absolute" and

concluded:

> These limited exceptions do not satisfy the concerns about access to the 'vast democratic forums of the internet' for a multiplicity of purposes that was the basis for the Supreme Court's decision.  *Packingham*, 137 S. Ct. at 1735-37 (internal quotation marks omitted). Furthermore, the possibility of certain case-by-case exceptions was insufficient to save other overly broad conditions of supervised release limiting internet or technology access, even when analyzed under a less demanding standard. *See United States v. Sofsky*, 287 F.3d 122, 126 (2d Cir. 2002); *United States v. Peterson*, 248 F.3d 79, 81, 82-84 (2d Cir. 2001). Therefore, the possibility of case-by-case exceptions from some of these conditions does not exempt them from *Packingham*, a conclusion reinforced by the nearly blanket manner they have allegedly been applied.

*Yunus,* 2019 WL 168544, at *16.

Courts in this circuit and others have held a condition requiring prior written approval

from a probation officer cannot salvage an otherwise overly broad restriction.  *See U.S. v.*

38

*Maxson*, 281 F.Supp.3d 594, 600 (D. Md. 2017) (citing *inter alia U.S. v. LaCoste*, 821 F.3d 1187, 1192 (9th Cir. 2016) ("If a total ban on Internet use is improper but a more narrowly tailored restriction would be justified, the solution is to have the district court itself fashion the terms of that narrower restriction.  Imposing a total ban and transferring open-ended discretion to the probation officer to authorize needed exceptions is not a permissible alternative.")); *see also Scott v. Rosenberger*, No. 19-CV-1769, 2020 WL 4274226, at *9 (S.D.N.Y. July 24, 2020) (". . .the possibility of case-by-case exceptions to a ban does not save an overly broad condition.").

In support of the contention that *Packingham* does not apply, Defendants cite to *U.S. v. Savastio*, 777 Fed. App'x 4 (2d Cir. 2019) and *U.S. v. Browder*, 866 F.3d 504 (2d Cir. 2017). Upon review, the Court finds Defendants' reliance upon the aforementioned cases to be misplaced.

In *Savastio*, the plaintiff was on supervised release.  The court "reject[ed] Savastio's attempt to rely on the principles articulated in *Packingham*" noting that, "[t]he Supreme Court explicitly linked its holding to 'the troubling fact that the law imposes severe restrictions on persons who already have served their sentence and are no longer subject to the supervision of the criminal justice system.' "  *Savastio*, 777 Fed. App'x at 4.

For several reasons, the Court is not persuaded that the holding in *Savastio* is controlling herein.  First, *Savastio* is a summary order and thus, lacks precedential effect. *See* Local Rule of the Second Circuit 32.1.1.  Second, the facts of *Savastio* are readily distinguishable.  Savastio pled guilty to possession of child pornography.  *Savastio*, 777. Fed. App'x at 5.   The condition of release that Savastio challenged read as follows:

39

> Your internet use will be limited and/or restricted under conditions to be set by the U.S. Probation Office in accordance with their Computer and Internet Monitoring Program. Such internet restriction may include a limitation of your daily internet use and/or the ban of certain websites, applications, chat rooms, or other internet activities as determined by the U.S. Probation Office. These determinations will be based upon an evaluation of your risk and needs, along with consideration of the factors outlined in 18 U.S.C. § 3553(a).

*Savastio*, 777 F. App'x at 5.  The Circuit noted that given the plaintiff's history of accessing child pornography over the internet, the condition was reasonably related to his history.  *Id.* Additionally, the court found *Packingham* "inapposite", because the condition allowed Savastio to receive permission from the probation office or district court and defined the condition as a monitoring requirement.  *Id*. at 7-8.  Here, Peoples has not been convicted of any crime involving pornography , minors, or the internet.  Moreover, Peoples' condition is not a "monitoring condition" and does not contain similar qualifying language.

In *Browder*, the Circuit referred to *Packingham* only in dicta, noting the differences between *Packingham* and Browder's challenges.  *Browder*, 866 F.3d 504, 511, n. 26. Notably, Browder's condition was a "computer monitoring" condition, not a complete internet ban.  *Id*.  Most "significantly" however, was the fact that Browder presented a Fourth Amendment challenge, while *Packingham* involved the First Amendment.  *Id*.  Here, Peoples' claims rest with the First Amendment and his condition cannot be described as a "monitoring" condition, but rather, a total internet ban.  Therefore, for the same reasons, Peoples' challenge is distinguishable from *Browder*.

In opposition to Defendants' motion, Peoples references a case presently before the United States District Court for the Eastern District of New York, *Jones, et al. v. Stanford and*

40

*Annucci*, No. 1:20-CV-1332 (E.D.N.Y. filed March 12, 2020), challenging the constitutionality of e-STOP. *See* Dkt. No. 82-1 at 8-9, 10. *Jones* presents a factual scenario strikingly similar to the facts presented herein. In *Jones*, the plaintiffs presented constitutional challenges to parole conditions imposed pursuant to e-Stop and DOCCS Directives 9201 and 9202. *Id.,* Dkt. No. 1. The plaintiffs were convicted of various sexual offenses including attempted rape, rape, sexual abuse, and sexual misconduct involving a minor. *Id.* at 11-18. The plaintiffs were designated at risk Levels One, Two, and Three, and as a condition of their release, an internet and social media ban was imposed. *Id*.

In August 2020, the plaintiffs filed a motion for a preliminary injunction seeking to enjoin the defendants from enforcing e-Stop and the Directives. *Jones*, at Dkt. No. 28. In a Memorandum & Order issued on September 9, 2020, the court granted the plaintiff's application and preliminarily enjoined the defendants from applying e-Stop and Directive 9201 "wholesale to Registrants who have not used the internet to facilitate the commission of their underlying sex offense." *Id*., Dkt. No. 37. The defendants argued that *Packingham* did not apply to "those on community supervision" and cited to *Savastio*. *Id*. at 9. Relying upon *Eaglin* and *Yunus*, the court rejected that argument. *Id.* The court distinguished the facts from those in the "non-precedential" case, noting that in *Savastio*, the condition was a "monitoring condition" that "did not amount to an outright ban on Savastio's access to all forms of social media." *Id.*

The court also noted that the ban was not narrowly tailored to the plaintiffs or in its application to social media. *Jones*, Dkt. No. 37 at 7-17. Addressing each plaintiff, the court noted that the underlying offenses did not involve improper internet use. *Id*. at 11-12. Under

the circumstances, the court reasoned that, perhaps "less restrictive alternatives" to monitor the plaintiff's internet use was available and concluded that the imposition of a "blanket ban" was "incompatible with the First Amendment." *Id.* at 12-14. The *Jones* case is presently pending in the Eastern District.

The Court agrees with the reasoning set forth in *Eaglin*, *Yunus*, and *Jones* and finds that the Special Conditions related to social networking websites, the internet, and Peoples' ability to own or possess a computer are overlapping and may infringe upon Peoples' First Amendment rights. While the Court does not dispute that a legitimate penological interest exists in monitoring Peoples' activities, Defendants have not offered any evidence or explanation regarding why such restrictive conditions are necessary or whether any other less restrictive means of monitoring Peoples were considered. *See U.S. v. Bolin*, 976 F.3d 202, 213-14 (2d Cir. 2020) (citing to *Packingham*, *Eaglin*, and *Savastio* and concluding that "[i]nternet monitoring, as opposed to a blanket ban, [. . .], remained to all outward appearances a viable option as it would adequately protect the public from [the releasee's] potential misuse of the Internet while imposing a more reasonable burden on [his] First Amendment interest in accessing the Internet."); *see Eaglin*, 913. F.3d at 98 (holding that an earlier Internet restriction under which his Internet use was monitored by the Probation Office, appeared to be a "viable option").

Most importantly, an issue that was somewhat ignored by Defendants on the motion, the record is devoid of any evidence establishing that the internet, social media, pornography, and children factored into any of Peoples' crimes or criminal history. Defendants have not proven, with competent admissible evidence, that the conditions are "narrowly tailored" so as

42

not to burden Peoples' First Amendment rights more than necessary. *See Scott*, 2020 WL 4274226, at *9 (holding that because the plaintiff's underlying crime did not involve computers or the internet, the restrictions on all computer or internet use without permission were not reasonably related to the plaintiff's conduct); *Yunus,* 2018 WL 3455408 at *32 (holding that parole conditions restricting access to computers and social media were not "narrowly tailored" as required by the Constitution because the plaintiff had never been charged with any internet-related criminal conduct). To be entitled to summary judgment on the issue of the constitutionality of the social media, internet, and computer restrictions, Defendants must prove that the conditions do not violate Peoples' constitutional rights and, on the record, the Court finds that Defendants have not met that burden. Accordingly, it is for the factfinder to conclude whether the special conditions involving technology infringe upon Peoples' First Amendment rights and the Court recommends that this portion of Defendants' motion for summary judgment be denied.

### g. Financial Documentation

> 23. I will provide copies of financial documents to my parole
> officer upon request. These documents may include, but
> are not limited to, all credit card bills, bank statements,
> and income tax returns.

Peoples argues that this condition is over-broad and unconstitutional.[14] Dkt. No. 1-1 at 13. Defendants argue that this condition is reasonably related to Peoples' criminal history, past conduct, and to deter recidivism and protect the public. Dkt. No. 71-2 at ¶ 49(K); Dkt.

---

[14]    Plaintiff also argues that the condition violates the settlement agreement in *Peoples v. Annucci*, No. 11-CV-2694 (S.D.N.Y. Mar. 16, 2016). Dkt. No. 82-1 at 11. The Court is familiar with the settlement agreement in *Peoples v. Annucci* and finds that it is not relevant or binding upon the Court as it relates to the issues presented herein.

No. 71-29 at 15.

"[F]inancial conditions may make it easier for the Probation Department to track [a parolee] in order to ensure his compliance with his registration obligation and with the conditions of his supervised release. *U.S. v. Bradshaw*, 653 Fed. App'x 325, 328 (5th Cir. 2016). However, where the conditions are "vague and overbroad" or imposed without context, the condition may impact liberties. *U.S. v. Sterling*, 959 F.3d 855, 863 (8th Cir. 2020) (reasoning that "broad financial disclosure conditions" are needed in cases involving convictions related to child support, debt, money, or greed).

Here, Peoples' conviction did not involve any monetary crimes and he is not required to make restitution payments. *Cf. U.S. v. Jeremiah*, 493 F.3d 1042, 1046 (9th Cir. 2007) (upholding restrictions on bank accounts, credit cards, and taxes because the conditions were reasonably related to supervising the defendant's ability to make restitution payments). While Peoples has a history of failing to comply with travel and geographical restrictions, the condition, as presently written, is overreaching as it does not include any language related to the purpose of the condition or language that would prevent the parole officer from demanding information arbitrarily. *But cf. U.S. v. Scaife*, No. 12 CR 519, 2015 WL 3775352, at *10 (N.D. Ill. May 20, 2015) (upholding condition that required the defendant to "provide the Probation Officer with access to requested financial information 'necessary to monitor compliance with the conditions of supervised release.' ").

Accordingly, the Court recommends that Defendants' motion for summary judgment be denied with respect to this special condition.

### h. Photo Imaging

44

> 32.    I will submit to photo imaging every 90 days, or
> whenever directed by my parole officer or other
> representative of the N.Y.S. Department of Corrections
> and Community Supervision.

Peoples argues that there is no evidence that he has ever altered his image or

attempted to alter his image and therefore, the condition is over broad and arbitrary.  Dkt.

No. 82-1 at 12; Dkt. No. 1-1 at 13.  Defendants contend that the condition is mandated by

statute and reasonably related to Peoples' criminal history, needed to protect the public, and

necessary to prevent future offenses.  Dkt. No. 71-29 at 18.

Pursuant to SORA and N.Y. Corr. Law § 168-f(3):

> . . . [a] sex offender designated as a sexual predator or having
> been given a level three designation must personally verify his
> or her address with the local law enforcement agency every
> ninety calendar days after the date of release or
> commencement of parole or post-release supervision, or
> probation, or release on payment of a fine, conditional
> discharge or unconditional discharge.  At such time the law
> enforcement agency having jurisdiction may take a new
> photograph of such sex offender if it appears that the offender
> has had a change in appearance since the most recent
> photograph taken pursuant to paragraph (b-2) of subdivision
> two of this section. If such photograph is taken, the law
> enforcement agency shall promptly forward a copy of such
> photograph to the division. The duty to personally verify shall be
> temporarily suspended during any period in which the sex
> offender is confined to any state or local correctional facility,
> hospital or institution and shall immediately recommence on the
> date of the sex offender's release.

A Level Three sex offender must register in person with the local police department

every ninety (90) days and their registration obligations continue annually for life.  *Rodriguez*

*v. Attorney Gen*., No. 10 CIV. 3868, 2011 WL 519591, at *5 (S.D.N.Y. Feb. 15, 2011);

*People v. Barber*, 27 Misc. 3d 1234(A), 911 N.Y.S.2d 694 (Sup. Ct. 2010) (citations omitted).

45

As discussed *supra*, Peoples was designated a Level Three sex offender.  Peoples has

not stated how this condition deprives him of a fundamental liberty interest in violation of the

Constitution.  Moreover, the government has a legitimate interest in SORA and protecting

the community from sex offenders.  *People v. Knox*, 12 N.Y.3d 60, 68 (2009).

Accordingly, the Court recommends that Defendants' motion for summary judgment, with

respect to this condition, be granted.

### i. Requirement to Comply with Conditions Imposed by Parole Officer

> 11.    I will comply with all case specific sex offender
> conditions to be imposed by the P.O.

Peoples argues that this condition is "overly-broad and unconstitutional" as it constitutes

a "blanket-condition meant to whimsically abuse discretion by overreaching and infringing on

constitutional rights."  Dkt. No. 1-1 at 11.

"A special condition of parole that is so vague that a person of common knowledge must

guess at its meaning will be struck down as void for vagueness."  *Yunus*, 2018 WL 3455408,

at *25 (quoting *LoFranco v. U.S. Parole Comm'n*, 986 F. Supp. 796, 808 (S.D.N.Y. 1997),

*aff'd,* 175 F.3d 1008 (2d Cir. 1999)).  While Alexander claims that the condition is

"specifically tailored" and "enables the calibration of his conditions according to his particular

risk factors and criminogenic needs," *see* Dkt. No. 71-2, Defendants did not present any

legal argument or caselaw in support of the motion for summary judgment with respect to this

condition.  As presently constituted, the condition does not "sufficiently inform" defendant of

"what conduct will result in his being returned to prison."  *See Yunus,* 2018 WL 3455408, at

*25.  As to this condition, there are genuine issues of material fact for a factfinder to resolve.

Therefore, the Court recommends that Defendants' motion for summary judgment be denied with respect to this special condition.

### C.  Personal Involvement

Defendants move for summary judgment and dismissal of all claims against Stanford, the Chairwoman of the Board, arguing that Stanford was not personally involved in the October 2018 determination imposing the Special Conditions at issue herein.  *See* Dkt. No. 71-29 at 21-25.  Peoples argues that Stanford was personally involved in the constitutional violations because she permitted a policy or custom to continue to deny registered sex offenders access to the internet and social media in violation of *Packingham*.  *Id*. at 14-15.

As discussed *supra*, Peoples sued Defendants for declaratory relief, injunctive relief, and compensatory damages.  Although Peoples does not specifically state that he is suing Defendants in their individual capacity, *see* Compl. at 1; Dkt. No. 1-1 at 1, 9-20, courts in this district assume that pro se prisoners intend to sue pursuant to § 1983 in both capacities. *See Zaire v. Doe*, No. 9:03-CV-629 (FJS/RFT), 2006 WL 1994848, at *10 (N.D.N.Y. July 13, 2006).  The arguments presented by Defendants in support of dismissal of the claims against Stanford, and Plaintiff's opposition, implies that the parties believe that the defendants have been sued in their individual capacities.  *See Davis v. Cty. of Nassau*, 355 F.Supp.2d 668, 675–76 (E.D.N.Y. 2005) (citing *Shabazz v. Coughlin*, 852 F.2d 697, 700 (2d Cir. 1988) (reasoning that the plaintiff's for damages, "coupled with the defendants' summary judgment motion [. . . ], suggests that the parties believed that this action is a personal capacity suit.") .

### 1.  Claims Against Stanford in her Individual Capacity

"Personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under [section] 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (citing *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)).  In order to prevail on a section 1983 cause of action against an individual, a plaintiff must show "a tangible connection between the acts of a defendant and the injuries suffered." *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986).  "To be sufficient before the law, a complaint must state precisely who did what and how such behavior is actionable under law." *Hendrickson v. U.S. Attorney Gen.*, 91-CV-8135, 1994 WL 23069, at *3 (S.D.N.Y. Jan. 24, 1994).

If the defendant is a supervisory official, a mere "linkage" to the unlawful conduct through "the prison chain of command" (i.e., under the doctrine of respondeat superior) is insufficient to show his or her personal involvement in that unlawful conduct.  *See Polk Cnty. v. Dodson*, 454 U.S. 312, 325 (1981); *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003); *Wright*, 21 F.3d at 501.  In other words, supervisory officials may not be held liable merely because they held a position of authority.  *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996).  Prior to *Iqbal*, the Second Circuit held that supervisory personnel may be considered "personally involved" only if they (1) directly participated in the alleged constitutional violation, (2) failed to remedy that violation after learning of it through a report or appeal, (3) created, or allowed to continue, a policy or custom under which the violation occurred, (4) had been grossly negligent in managing subordinates who caused the violation, or (5) exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that the violation was occurring.  *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir.

48

1995) (citing *Williams v. Smith*, 781 F.2d 319, 323-24 (2d Cir. 1986)).

In a recent case, *Tangreti v. Bachmann*, the Second Circuit addressed how the Supreme Court's decision in *Iqbal* affected the standards in *Colon* for establishing supervisory liability. *Id.*, 2020 WL 7687688 (2d Cir. 2020). In *Tangreti*, the plaintiff was sexually abused by correctional officers at York Correctional Institute in 2014 and argued that the defendant, a counselor supervisor, violated the Eighth Amendment by exhibiting deliberate indifference to the risk of sexual abuse by the officers. *Id.* at * 2, 3. Consistent with other circuits, the court concluded that "there is no special rule for supervisory liability" and held that a "plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, had violated the Constitution.' " *Id.* at *6. Therefore, to avoid summary judgment, the plaintiff had to establish that the defendant violated the Eighth Amendment by her "own conduct, not by reason of [her] supervision of others who committed the violation" and could not "rely on a separate test of liability specific to supervisors." *Id.*

In support of the motion, Stanford provided a Declaration and avers that she does not have authority to unilaterally establish a process for administratively appealing the imposition of special conditions by a Parole Board panel. Dkt. No. 71-24 at ¶ 7. Stanford was not present at Peoples' parole interview, she did not review the Board's conclusions and, in fact, was not aware of the Board's decision until she was served with the summons and Complaint in this lawsuit. *Id.* at ¶ 13. Stanford had no contact with Peoples, prior to being served with the Complaint. *Id.* at ¶ 15.

Based upon the holding in *Tangreti*, summary judgment should be entered in favor of Stanford. The record lacks any evidence that Stanford violated Plaintiff's First and/or

Fourteenth Amendment rights through her own individual actions or conduct.

Even if the Court considers the *Colon* factors, summary judgment is still warranted. The third *Colon* category provides for personal involvement where "the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom." *Colon*, 58 F.3d at 873. "A policy or custom can be explicitly established in an adopted rule or regulation, or may exist if the 'violative practice is persistent and widespread,' and if the acts of subordinate employees 'imply the constructive acquiescence of senior policy-making officials.' " *Lipton v. Cty. of Orange*, 315 F.Supp.2d 434, 453 (S.D.N.Y. 2004). To establish personal involvement pursuant to the third *Colon* factor, a plaintiff must produce evidence that the defendant had policymaking responsibility and that, after notice of an unconstitutional practice, the defendant created the improper policy or allowed it to continue, causing the harm. *See Pusepa v. Annucci*, No. 17-CV-7954, 2019 WL 720699, at *4 (S.D.N.Y. Feb. 19, 2019) (citation omitted).

Even assuming that Stanford was responsible for creating policy, Peoples has not presented evidence establishing that Stanford was on notice that an unconstitutional policy existed and failed to take action. The record lacks facts related to other instances of similar unconstitutional practices involving registered sex offenders and their access to the internet and social media in violation of *Packingham*, or evidence of Stanford's knowledge of the instances to permit a jury to find that Stanford was personally involved pursuant to the third *Colon* factor. *See Pusepa*, 2019 WL 720699, at *7 (accepting allegations of frequent sexual abuse at facility to suggest that the supervisory defendants were aware that their policies permitted the abuse to continue); *see also Casey v. Brockley*, No. 9:13-CV-01271

50

(DNH/TWD), 2018 WL 1399244, at *9 (N.D.N.Y. Feb. 16, 2018) (awarding summary judgment in favor of the superintendent because the plaintiff failed to provide evidence of similar events and "sheds no light on [the Superintendent's] actions or conduct in creating or permitting a policy or custom").[15]

Thus, the Court recommends granting Defendants' motion summary judgment and dismissing Peoples' claims against Stanford, in her individual capacity.

### 2. Claims Against Stanford in her Official Capacity

Although it is well settled that, in order to establish a defendant's individual liability in a suit brought under § 1983 for monetary damages, a plaintiff must show, *inter alia*, the defendant's personal involvement in the alleged constitutional deprivation, *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013), "district courts in this Circuit have held 'that the personal involvement requirement does not apply to bar actions . . . pursuant to § 1983 for injunctive relief against a state official.' " *Nassau & Suffolk Cty. Taxi Owners Ass'n, Inc. v. State*, 336 F.Supp.3d 50, 68 (E.D.N.Y. 2018) (quoting *Marinaccio v. Boardman*, No. 1:02-CV-00831, 2005 WL 928631, at *9 (N.D.N.Y. Apr. 19, 2005)); *McLaurin v. Paterson*, No. 07 CIV 3482, 2008 WL 3402304, at *11 (S.D.N.Y. Aug. 11, 2008) (denying motion to dismiss the claims against the Governor and the Chairman of the Division of Parole in their official capacities based upon the lack of personal involvement in parole hearings). However, "[u]nder *Ex parte Young*, the state officer against whom a suit is brought 'must have some connection with the enforcement of the act' that is in continued violation of federal law." *Daily*

---

[15]    With respect to the remaining *Colon* factors, the record evidence does not suggest that Stanford was aware of Peoples' claims or that she acted, or failed to act, once placed on notice of the allegations.

*Mart Convenience Stores, Inc. v. Nickel (In re Dairy Mart Convenience Stores, Inc.)*, 411

F.3d 367, 372–73 (2d Cir. 2005) (quoting *Ex Parte Young*, 209 U.S. at 154, 157)).  "So long

as there is such a connection, it is not necessary that the officer's enforcement duties be

noted in the act."  *Id.*; *Rother v. NYS Dep't of Corr. & Cmty. Supervision*, 970 F.Supp.2d 78,

102–03 (N.D.N.Y. 2013) (reasoning that "[a]ll that a Plaintiff must show is that the official

had: (1) 'a direct connection to, or responsibility for, the alleged illegal action[s]'; and (2) 'the

authority to perform the required act.' ") (citation omitted).

Defendants' arguments in support of summary judgment are limited to an analysis of the

*Colon* factors and personal involvement as it relates to claims for damages against Stanford,

in her individual capacity.  Defendants offer no argument or evidence establishing that

Stanford is not "connected" with the decisions to impose special conditions of parole.

The evidence before the Court does not demonstrate an absence of an issue of fact

regarding whether Peoples is prevented from asserting a claim for injunctive relief against

Stanford.  Thus, the Court recommends denying Defendants' motion summary judgment and

dismissal of Peoples' claims against Stanford, in her official capacity.

### D.  Judicial Immunity

Defendants argue that Peoples' claims against Alexander are barred by absolute

immunity.  Dkt. No. 71-29 at 19-20.  Peoples did not respond to this argument.

It is well established that "officials acting in a judicial capacity are entitled to absolute

immunity against § 1983 actions, and this immunity acts as a complete shield to claims for

money damages."  *Montero v. Travis*, 171 F.3d 757, 760 (2d Cir. 1999) (citation omitted).

This immunity extends to claims for injunctive relief unless a declaratory decree was violated

or declaratory relief is unavailable.  *Id.* at 761;  *Davis v. Travis*, No. 07 CIV. 3047, 2008 WL 5191074, at *3 (S.D.N.Y. Dec. 3, 2008) (holding that absolute immunity barred claims for damages and injunctive relief against parole board officials).  "[A]bsolute immunity protects officials in their adjudicative or prosecutorial functions[,]" but "does not extend to the performance of administrative or investigative functions."  *Farrell v. Burke*, No. 97 Civ. 5708, 1998 WL 751695, at *4 (S.D.N.Y. Oct. 28, 1998) (citing *Scotto v. Almenas*, 143 F.3d 105, 110 (2d Cir.1998)).

"[P]arole board officials, like judges, are entitled to absolute immunity from suit for damages when they serve a quasi-adjudicative function in deciding whether to grant, deny or revoke parole" because these tasks are "functionally comparable to that of a judge." *Montero,* 171 F.3d at 761; *Scotto*, 143 F.3d at 111.  While some courts have held that the imposition of special parole conditions can be an adjudicative act that merits absolute immunity, courts in this circuit have also recognized that the decision to impose special conditions may be administrative in nature and "void of any discretion on the parole official's part." *Hartwick*, 2020 WL 6781562, at *8 (citations omitted); *Doe v. Annucci*, No. 14 CIV. 2953, 2015 WL 4393012, at *8 (S.D.N.Y. July 15, 2015); *Farrell*, 1998 WL 751695, at *4 (citing *inter alia, Morrissey v. Brewer*, 408 U.S. 471, 478 (1972) (stating that parole officers perform largely administrative functions)).  To resolve the issue of whether the imposition of special conditions of parole is an adjudicative or administrative act, a factual inquiry is necessary.  *Farrell*, 1998 WL 751695, at *4.

Although Defendants move for summary judgment on this issue, the motion lacks any argument or analysis of Alexander's role or facts establishing that she performed solely

adjudicative functions, rather than administrative or investigative.  Conversely, the record before the Court indicates that some of the special conditions imposed were the "product of an adjudicative process" while others were administered pursuant to statutory authority; "as administrative."  *See Hartwick,* 2020 WL 6781562, at *8 (declining to apply absolute immunity where the Board allegedly imposed statutory unconstitutional parole conditions related to the internet).

Based upon the record, the Court finds issues of fact for a jury to resolve related to the issue of immunity.  Accordingly, the undersigned recommends denying the Defendants' motion for summary judgment on this ground.  *See Farrell*, 1998 WL 751695, at *4 (refusing to dismiss on the grounds of absolute immunity where the facts did not permit the Court to determine whether the parole officers acted adjudicatively or administratively in imposing special conditions).[16]

### E.  Qualified Immunity

In the alternative, Defendants argue that they are shielded from liability based on the doctrine of qualified immunity because Peoples had no clearly established right to be free from the special conditions he challenges.[17]  Dkt. No. 71-29 at 26-27.

---

[16]     Defendants cite to *Stewart v. Smallwood*, No. 92 Civ. 4043, 1993 WL 77381 (S.D.N.Y. Mar. 15, 1993), in support of the argument that officials who imposed parole conditions are absolutely immune from civil damages.  In *Hartwick,* Judge Hurd deviates from the decision in *Stewart* noting that the court found "parole board officials absolutely immune without further inquiry."  *Hartwick*, 2020 WL 6781562, at *8.

[17]     To the extent that Defendants move for summary judgment and dismissal of all claims based on the doctrine of qualified immunity, I do not consider these arguments in the context of claims for which I have already recommend dismissal in this Report-Recommendation.  *See Armand v. Simonson*, 12-CV-7709, 2016 WL 1257972, at *15 (S.D.N.Y. Mar. 30, 2016) ("[b]ecause the Court dismisses Plaintiff's claim against Peterson, there is no need to consider whether she may also be entitled to qualified immunity."); *see also Posr v. City of New York*, 10-CV-2551, 2013 WL 2419142, at *10, n.8 (S.D.N.Y. June 4, 2013) ("Because [the defendant] did not violate [the] [p]laintiff's [constitutional] rights, there is no need to consider if [the defendant] is entitled to qualified immunity."), *aff'd sub nom. Posr v. Ueberbacher*, 569 Fed. App'x 32 (2d Cir. 2014).

Qualified immunity shields federal and state officials from suit " 'unless [1] the official violated a statutory or constitutional right that [2] was clearly established at the time of the challenged conduct.' " *Terebesi v. Torreso*, 764 F.3d 217, 230 (2d Cir. 2014) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). "A right is 'clearly established' if 'it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.' " *Beckles v. City of New York*, 492 Fed. App'x 181, 182 (2d Cir. 2012) (quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001)).

To determine whether a state official is entitled to qualified immunity for acts taken during the course of his or her employment, a reviewing court is to determine: " '(1) whether plaintiff has shown facts making out violation of a constitutional right; (2) if so, whether that right was clearly established; and (3) even if the right was clearly established, whether it was objectively reasonable for the [official] to believe the conduct at issue was lawful.' " *Phillips v. Wright*, 553 Fed. App'x 16, 17 (2d Cir. 2014) (quoting *Gonzalez v. City of Schenectady*, 728 F.3d 149, 154 (2d Cir. 2013)). "Even if the right at issue was clearly established in certain respects, however, an officer is still entitled to qualified immunity if 'officers of reasonable competence could disagree' on the legality of the action at issue in its particular factual context." *Doe v. Lima*, 270 F.Supp.3d 684, 710 (S.D.N.Y. 2017) (citations omitted), *aff'd sub nom*. *Doe v. Cappiello*, 758 Fed. App'x 181 (2d Cir. 2019).

Qualified immunity only bars monetary damages - it does not bar declaratory and injunctive relief. *Robinson v. New York*, 486 Fed. App'x 905, 907 (2d Cir. 2012); *Singleton v. Doe*, 210 F.Supp.3d 359, 371 (E.D.N.Y. 2016) (citing *Allen v. Coughlin*, 64 F.3d 77, 81 (2d Cir. 1995)). Thus, Defendants' motion for summary judgment and dismissal of the claims for

declaratory relief and injunctive relief prohibiting the enforcement of the special conditions of parole is denied.

With respect to Peoples' claim for monetary damages, the record contains genuine issues of material fact as to the constitutionality of certain Special Conditions of parole. As such, the first prong of the qualified immunity analysis has been met.

With respect to the second prong, in support of the motion for summary judgment, Defendants summarize the legal standards related to qualified immunity and state, in a cursory manner, that Peoples had no clearly established right to be free from any of the special conditions of confinement. Dkt. No. 71-29 at 27. While Defendants are correct, it is also well established that parole conditions may not be applied in an arbitrary and capricious manner and must be reasonably related to the parolee's underlying offense. *Yunus*, 2019 WL 168544, at *19 (S.D.N.Y. Jan. 11, 2019) (citation omitted); *Scott*, 2020 WL 4274226, at *13. As discussed *supra*, there are genuine issues of material fact as to whether Defendants acted arbitrarily and capriciously in imposing Special Conditions 18, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, and 33. Further, as previously noted, cases in this Circuit have held that special conditions on internet and computer access may infringe upon a parolee's First Amendment rights if the restrictions are overly-broad and not reasonably related to a parolee's past conduct. Defendants' brief lacks any argument suggesting that Peoples' right to be free from some or all of these conditions was not clearly established. On the basis of the record before it, the Court cannot find that Defendants are entitled to the protections of qualified immunity.

Therefore, the Court recommends denying Defendants' motion for summary judgment

and dismissal based upon qualified immunity.

### F. Declaratory and Injunctive Relief Against Leon

Leon avers, and Peoples does not dispute, that she retired from DOCCS in January 2020 and is no longer employed by DOCCS.  Dkt. No. 71-23 at ¶1.  Therefore, because Leon does not have the authority to remedy any ongoing constitutional violations, Peoples cannot seek injunctive or declaratory relief against her.  *Marshall v. Annucci*, No. 16-CV-8622, 2018 WL 1449522, at *8 (S.D.N.Y. Mar. 22, 2018).  Accordingly, Peoples' claims for injunctive and declaratory relief against Leon are dismissed, sua sponte, as moot. *McKethan v. New York State Dep't of Corr. Servs*., No. 10 CIV. 3826, 2012 WL 2367033, at *2 (S.D.N.Y. June 21, 2012) (finding that retiree has no ability to provide injunctive relief) (citing *Corr. Officers Benevolent Assoc. v. Kralik*, No. 04–CV–2199, 2009 WL 856395, at *8 (S.D.N.Y. Mar. 26, 2009)) ("[B]ecause a defendant no longer occupied the position which he occupied at the time of the underlying events, and therefore did 'not have the official capacity necessary to enable him to comply with the injunctive relief sought,' he had to be dismissed from the case").

### G.  Doe Defendants

As discussed *supra*, Peoples asserted claims against two unnamed defendants identified as Commissioner Jane Doe and Commissioner John Doe.  Compl. at 1, 2.  In a Memorandum-Decision and Order issued on February 19, 2019 (the "February Order"), the Court directed Plaintiff to "take reasonable steps to ascertain their identities through discovery[.]" Dkt. No. 8 at 10.  Peoples was advised to amend the operative pleading to properly name the individuals as parties and was advised that if he failed to ascertain the

identify of the Doe defendants to permit timely service of process, all claims against the individuals were subject to dismissal. *Id*.

Peoples did not comply with the February Order and, further, his opposition to Defendants' motion is devoid of any reference to the Doe Defendants. Therefore, as to the still unidentified John Doe and Jane Doe Defendants, I recommend these Defendants be dismissed based upon: (1) Fed. R. Civ. P. 16(f) for failure to comply with a court order pursuant to; (2) Fed. R. Civ. P. 41(b) and N.D.N.Y.L.R. 41.2(a) for failure to prosecute under; and (3) Fed. R. Civ. P. 4(m) for failure to serve within 90 days.

## IV.  CONCLUSION

**WHEREFORE**, based on the findings set forth above, it is hereby:

**RECOMMENDED**, that Defendants' motion for summary judgment and dismissal (Dkt. No. 71) be **GRANTED** as to:

a.  Plaintiff's claims for monetary damages against Defendants in their official capacities;

b.  Plaintiff's First and Fourteenth Amendment claims related to Special Conditions 3, 4, 8, 10, 14, 15, 16, 32, 34, 35, and 36;

c.  Plaintiff's claims for monetary damages against Stanford in her individual capacity; and it is further

**RECOMMENDED**, that Defendants' motion (Dkt. No. 71) be **DENIED** as to:

a.  Plaintiff's First and Fourteenth Amendment claims related to Special Conditions 11, 18, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, and 33; and

b.  Plaintiff's claims for injunctive relief against Stanford in her official capacity; and

c.   the issue of judicial immunity; and

d.  the issue of qualified immunity; and it is further

**RECOMMENDED**, that Plaintiff's claims against Jane Doe and John Doe be

**DISMISSED**, *sua sponte*; and it is further

**RECOMMENDED**, that Plaintiff's claims for injunctive and declaratory relief against Leon

be **DISMISSED**, sua sponte; and it is further

**ORDERED**, that copies of this Report-Recommendation and Order be served on the

parties in accordance with the Local Rules; and it is further

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14)[18] days within which to

file written objections to the foregoing report.  Such objections shall be filed with the Clerk of

the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS**

**WILL PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir.

1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989));

28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 6(e), 72.

Dated: January 4, 2021

Miroslav Lovric
U.S. Magistrate Judge

---

[18]        If you are proceeding pro se and are served with this Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the order was mailed to you to serve and file objections.  Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  Fed. R. Civ. P. 6(a)(1)(c).